UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS A. DAVENPORT, JR.,<br><br>               Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>               Defendant. | Case No. 3:13-cv-05067-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On April 27, 2007, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning February 1, 2006, due to sarcoidosis. See ECF #11, Administrative Record ("AR") 157, 284. Both applications were denied upon initial administrative review on September 12, 2007, and on reconsideration on March 25, 2008. See AR 157. A hearing was held before an administrative law judge ("ALJ") on September 9, 2009, at which plaintiff, represented by counsel, appeared

ORDER - 1

1  and testified, as did a vocational expert. See AR 85-149.

2  In a decision dated February 24, 2010, the ALJ determined plaintiff to be not disabled.

3  See AR 157-64.  On April 12, 2011, the Appeals Council granted plaintiff's request for review,

4  remanding the matter for further consideration of the evidence in the record concerning her

5  mental impairments, including "if necessary, obtain[ing] evidence from a medical expert to

6  clarify the nature and severity of [plaintiff]'s impairments." AR 172.  On December 15, 2011,

7  another hearing was held before a different ALJ, at which plaintiff, represented by counsel,

8  appeared and testified, as did a lay witness and a different vocational expert. See AR 29-84.

9  In a decision dated January 12, 2012, the second ALJ determined plaintiff to be not

10 disabled as well. See AR 9-21.  Plaintiff's request for review of the second ALJ's decision was

11 denied by the Appeals Council on December 13, 2012, making that decision the final decision of

12 the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, §

13 416.1481.  On February 11, 2013, plaintiff filed a complaint in this Court seeking judicial review

14 of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the

15 Court on May 14, 2013. See ECF #11.  The parties have completed their briefing, and thus this

16 matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred in failing to obtain evidence from a medical expert regarding the impact and interplay of his physical and mental health impairments.  For the reasons set forth below, however, the Court disagrees that the ALJ so erred, and therefore finds defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

As noted above, in remanding this matter for further proceedings the Appeals Council directed the ALJ to "if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments." AR 172.  In her decision following remand, the ALJ stated that because she found plaintiff's mental health impairments to be severe at step two of the sequential disability evaluation process,[2] "it was not necessary to obtain evidence from a medical expert to clarify their nature and severity." AR 9.  Plaintiff argues the ALJ erred in failing to call a medical expert to evaluate the impact and interrelation of her physical and mental impairments in regard to her ability to function.  The Court disagrees.

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  It is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," however, that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  The ALJ in this case did not find the record to be inadequate. See AR 9-21.  Further, while the evidence relied on by plaintiff in this case may be ambiguous to some extent as to the exact nature of the interrelation between his physical and mental symptoms, as well as his future prognosis, it is not at all ambiguous as to the impact his impairments have on his ability to perform work-related tasks.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  The step two inquiry, however, is merely a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

ORDER - 4

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

In support of her determination that plaintiff had the mental residual functional capacity to "**work independently and not be required to work as part of a team**" and "**have no public contact, but he can have occasional, brief, and superficial contact with supervisors**"[3] (AR 13 (emphasis in original)), the ALJ found in relevant part:

---

[3] If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id. A claimant's residual functional capacity is the maximum

ORDER - 5

> Consultative examiner Katrina L. Higgins, PsyD examined the claimant and reviewed his medical records (Ex. 37F/1). Dr. Higgins administered mental status testing, and noted that the claimant alleged problems with his short-term memory, but he was able to recall two of three words after 5 minutes, and he was able to repeat seven digits forward (Ex. 37F/4). He answered nine of nine math questions quickly and correctly, and he demonstrated no concentration deficits on digit span (Ex. 37F/4). He was able to follow a 3-step command (Ex. 37F/4). Based on the mental testing and her interview with the claimant and review of his medical records, Dr. Higgins opined that the claimant had a minimal impairment in his ability to withstand the stress and pressures associated with day-to-day work activities, and he was capable of performing simple and repetitive, or even slightly more detailed tasks without difficulty (Ex. 37F/5). Dr. Higgins opined that the claimant could be expected to carry out work-related tasks with adequate pace and perseverance over a prolonged period, without interruption from psychological symptoms (Ex. 37F/5). Dr. Higgins noted that the claimant interacted appropriately with her and with her office staff, and she opined that he would be able to do so with coworkers and the public (Ex. 37F/5). Dr. Higgins's opinion is based on a thorough examination of the claimant, and a review of his medical records. Her opinion is consistent with the objective mental status testing, which shows that the claimant is able to interact with others, and perform simple, routine and some complex tasks. For these reasons, Dr. Higgins's opinion is given significant weight.

AR 19.

In asserting error here, plaintiff argues "[n]oticeably missing from the ALJ's analysis was a discussion of" Dr. Higgins's opinion that his "apparent mental health symptoms (i.e. symptoms of depression and anxiety) are not a primary barrier to employment therefore psychological treatment would do little to help him at this point." ECF #13, p. 13; AR 726. But this merely shows Dr. Higgins felt plaintiff was not vocationally limited by his mental health symptoms. In addition, she provided that opinion in the context of discussing the uncertainty of plaintiff's *prognosis* "[f]rom a psychological standpoint." AR 726. It is true that Dr. Higgins went on to state that "[t]he exact nature of his difficulties" needed "to be confirmed through careful and thorough medical evaluation," but again this was solely to determine "if his ongoing physical

---

amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.
ORDER - 6

health problems are actually psychogenic in nature," in which case psychological treatment would be needed "to regain control of his body and his life." Id.

Dr. Higgins did also posit that "perhaps there are physical symptoms that mimic anxiety or exacerbate anxiety, and therefore a diagnosis of anxiety due to sarcoidosis was given," but she noted as well that while plaintiff "attributes a lot of his ongoing health concerns to sarcoidosis," his "records do not support the severity of the symptoms he reports." AR 725-26.  In any event, to the extent Dr. Higgins saw a physical component to plaintiff's health problems, she did not give any indication that such a component would result in any greater functional limitations than she noted in her evaluation, about which she was far from ambiguous. See id.  Her findings thus do not support the need for medical expert testimony.

Plaintiff also points to a May 15, 2003 letter from Jane Tinker, Ph.D., in which plaintiff asserts Dr. Tinker "had suggested that [his] symptoms could be attributed to either anxiety or to a physical phenomenon." ECF #13, p. 13.  But that letter does not clearly make that suggestion. Rather, Dr. Tinker merely stated she was "not in a position to say" plaintiff "should ignore" the "EKG anomaly" that purportedly was found, and instead suggested he did not "need to panic about them," but also thought he "would benefit from an antidepressant to reduce [the] anxiety symptoms" he was having. AR 367.  Dr. Tinker, furthermore, gave no indication that she felt he was suffering from any physical or mental limitations – or combination thereof – let alone ones that would impact his ability to perform work-related activities.  In addition, Dr. Tinker's letter is dated nearly three years prior to plaintiff's alleged onset date of disability.[4]

Similarly, although treating physician Andrew Ming Cheng, M.D., commented in early February 2008, that "perhaps [plaintiff's] palpitations may not be related to sarcoid[osis], at all"

---

[4] See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

ORDER - 7

(AR 589), this merely confirms what Dr. Higgins suspected in terms of diagnosis, and again it offers no opinion concerning actual ability to function. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). The same is true with regard to the late March 2010 suggestion of Margaret M. Krieg, M.D., that because plaintiff's palpitations "do not seem to be causing him any undue harm, . . . maybe he should get treatment for his anxiety." AR 710.

Lastly in regard to the medical evidence in the record, plaintiff points out that Daniel M. Neims, Psy.D., commented in late March 2010, that the "[f]ull role of psychological factors in presenting [his] chronic pain issues could [were] difficult to estimates [sic] without background medical," and in early May 2011, that his "somatic complaints are likely to be chronic and accompanied by fatigue and weakness that renders [him] incapable of performing even minimal role expectations." AR 667, 754. With respect to the opinions of Dr. Neims, the ALJ found:

> [Dr. Neims] evaluated the claimant for [state agency] benefits on two occasions (Ex. 30F; Ex. 40F). On March 19, 2010, Dr. Neims opined that the claimant had a mild limitation in his ability to understand, remember and follow complex instructions, and he had a moderate limitation in his ability to learn new tasks, exercise judgment and make decisions, and perform routine tasks (Ex. 30F/4). He opined that the claimant had a moderate limitation in his ability to relate appropriately to coworkers and supervisors, and a moderate limitation in his ability to maintain appropriate behavior in a work setting (Ex. 30F/4). Dr. Neims opined that the claimant had a marked limitation in his ability to interact appropriately in public contacts, and a marked limitation in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Ex. 30F/4). Although he attached a narrative statement, it does not contain any objective test results, and it does not explain his opinion. Per the claimant's girlfriend's testimony, he is able to leave the house every day and follow through with his commitments. Dr. Neims completed another [state agency] form on May 3, 2011 and opined that the claimant now had a marked limitation in his ability to communicate and perform effectively in a work setting with even limited public contact (Ex. 40F/3). He opined that the claimant was disabled (Ex. 40F/3). Dr. Neims did not explain why he believed the claimant was disabled, and moreover, the ultimate issue of disability is expressly reserved to the Commissioner (Social Security Ruling 96-5p). His opinion is not consistent

> with the medical evidence that the claimant is able to go out in public daily, and the claimant even stated in the interview that he avoided isolating from others (Ex. 40F/5).  For all of these reasons, Dr. Neims's opinion is given little weight.

AR 18-19.

First, it must be noted that plaintiff does not challenge the specific reasons the ALJ gave for giving little weight to the opinion of Dr. Neims,[5] which the Court finds were not improper.[6] Second, despite Dr. Neims's comments concerning the need for a background medical in order to estimate the full role of psychological factors plaintiff had and plaintiff's somatic complaints likely making him incapable of performing role expectations, as well as plaintiff's tracing many of his issues "back to physical problems" (AR 667), as with Dr. Higgins, Dr. Neims's opinion is not at all ambiguous as to the mental functional limitations he felt plaintiff had.  Third, Dr. Neims did not indicate anywhere in his evaluation reports that to the extent he believed there to be a physical component to plaintiff's complaint, it would result in any greater restrictions in his ability to function. See AR 666-73, 748-55.

In addition, other than as noted above, plaintiff does not challenge the ALJ's evaluation of the medical evidence in the record concerning his physical impairments or assessment of his physical residual functional capacity, which the record overall supports. See AR 421-23, 435-440, 463-70, 478, 480, 499, 539-41, 561, 577-79, 583-85, 588-89, 605-07, 614-15, 618, 620,

---

[5] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

[6] See Batson, 359 F.3d at 1195 (ALJ need not accept physician's opinion if inadequately supported by clinical findings or "by the record as a whole"); Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including claimant's reported activities of daily living, contradicted that conclusion); Magallanes, 881 F.2d at 754 (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's own subjective complaints); Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (ALJ not bound by medical opinions on ultimate issue of disability).

ORDER - 9

623, 629, 639, 654-55, 675, 708-10, 720, 732, 764, 766, 768-69, 773-75, 778.  Thus, again, even if plaintiff is correct that there is both a physical and mental aspect to his health issues, he has not shown the existence of any functional limitations greater than those the ALJ found or the record to be ambiguous with regard thereto to warranting additional medical expertise.

Plaintiff's reliance on the Ninth Circuit's opinions in <u>Lester</u> and <u>Tonapetyan</u> are also to no avail.  In <u>Lester</u> the ALJ had analyzed the claimant's mental and physical impairments separately in determining that none of the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") had been met or medically equaled.  Taking note of the requirement that "[i]n evaluating a claimant with more than one impairment [in terms of the Listings], the [ALJ] must consider 'whether the combination of [the claimant's] impairments is medically equal to any listed impairment,'" the Ninth Circuit found the ALJ erred in treating the claimant's impairments separately, because the evidence in the record showed "the consequences" of those impairments were "so inextricably linked."  <u>See</u> 81 F.3d at 829-30 (quoting 20 C.F.R. § 404.1526(a)).  As pointed out by defendant, though, in this case the Listings are not at issue.  Nor, as discussed above, does the medical evidence – to the extent plaintiff's mental and physical impairments can be said to be likewise "so inextricably linked" – show a combination thereof would result in any greater functional limitations than the ALJ already has assessed.

The Ninth Circuit's decision in <u>Tonapetyan</u> is similarly unhelpful to plaintiff.  There, the Court of Appeals noted that while the ALJ himself "did not specifically find that the evidence of [the claimant's] mental impairment was ambiguous, or that he lacked sufficient evidence to render a decision, he relied heavily upon the testimony of the medical expert . . . who found just that." 242 F.3d at 1150.  For example, the medical expert described one medical source's "lack of anecdotal records as 'confusing'."  <u>Id.</u>  He also recommended that "a more detailed report be

ORDER - 10

obtained," and "found it 'difficult to say' whether the medical record was complete enough to allow the ALJ to reach a conclusion in the case." Id. In addition, the medical expert "resisted concluding that [the claimant] did or did not suffer from schizophrenia," suggested he "would 'have to see more evidence of that'" before he could so conclude and he "remained equivocal throughout his testimony." Id. Unlike in Tonapetyan, the medical opinion evidence in this case is, as discussed above, not at all ambiguous concerning plaintiff's functional capabilities. The ALJ, therefore, was not obligated to obtain additional medical expert testimony in order to make a determination of non-disability supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 20th day of March, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11